46114. STATE OF GEORGIA v. MOORE.
46115. STATE OF GEORGIA v. PLEDGER.
46116. STATE OF GEORGIA v. SCOTT.
46117, 46118. STATE OF GEORGIA v. JONES.

(376 SE2d 877)

WELTNER, Justice.

The State prosecuted four truckdrivers for operating vehicles in excess of sixty feet, as prohibited by OCGA § 32-6-24. They filed general demurrers, challenging the constitutionality of the statute on various grounds.

The trial court sustained the demurrers on every ground.

*Equal Protection*

1. The present statute establishing length limits (OCGA § 32-6-24) provides that "no vehicle or combination of vehicles and load shall exceed a total length of 60 feet" unless it is exempt, as follows:

(a) The length limitation of 60 feet does not apply to the operation of farming, agricultural, or forest management equipment under specified conditions within a 40-mile radius of the property of the owner. OCGA § 32-6-25.[1]

(b) Total lengths — i.e., combination of vehicles and loads — exceeding 60 feet are permitted in the following instances: (1) certain loads of single length pieces, unless the total length of vehicle and

---

[1] "The limitations of Code Section 32-6-23 as to width and of Code Section 32-6-24 as to length shall not apply to the following loads and vehicles, which may exceed such limitation without a permit: farming or agricultural equipment or forest management equipment, whether self-propelled or being hauled, when such vehicle or equipment is being operated during daylight hours upon a public road not part of the National System of Interstate and Defense Highways by dealers or by the owner thereof or his agent within a radius of 40 miles of the property of the dealer or owner. The foregoing exemptions do not apply to vehicles hauling or transporting forest products."

load exceeds 75 feet, in which event a single trip permit is required;[2] (2) vehicles transporting motor vehicles, or, automobile carriers; however 65 feet shall be the limit;[3] (3) combination of vehicle and load transporting live poultry no longer than 65 feet;[4] (4) combination of vehicle and load of flat-bed van carriers not exceeding 63 feet in length.[5] OCGA § 32-6-24 (b).

(c) The Department of Transportation may issue, upon application, permits in writing authorizing the applicant to operate on public roads vehicles with lengths exceeding 60 feet upon a showing of certain specified conditions. OCGA § 32-6-28.

2. OCGA § 32-6-24 is part of the Georgia Code of Public Transportation, whose stated purpose is "to provide for the administration, financing, construction, maintenance, and operation of an adequate and integrated system of public roads and other modes of transportation in Georgia so that *the safety, convenience and interests of the various modes of public transportation and the public will be promoted and served. . . .*" Ga. L. 1973, p. 947. (Emphasis supplied.)

3. We have asserted on many occasions that

"[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' [Cit.]"

---

[2] "Loads of poles, logs, pilings, lumber, structural steel, timber structural members, piping, and prestressed and precast concrete may exceed the length of 60 feet without requiring a permit when they are single length pieces and no pieces are loaded end to end, but a single trip permit shall be required if the total length of such vehicle and load exceeds 75 feet. In addition to the single trip permits so required in this paragraph for vehicles exceeding 75 feet in length, an annual permit for these vehicles may be secured if the motor vehicles are transporting poles and pilings from the woods to the processing plant [a business engaged in manufacturing poles and pilings for commercial purposes] or transporting poles for utility companies when such poles cannot be readily dismantled or separated." OCGA § 32-6-24 (b) (2).

[3] "Vehicles transporting motor vehicles (commonly known as automobile carriers) shall not carry a load exceeding 65 feet in length. However, subsection (a) of this Code section, which provides that no trailer shall exceed 45 feet in length, shall not apply to automobile carriers." OCGA § 32-6-24 (b) (3).

[4] "Vehicles transporting live poultry shall not carry a load exceeding 65 feet in length. However, subsection (a) of this Code section, which provides that no trailer shall exceed 45 feet in length, shall not apply to vehicles hauling live poultry." OCGA § 32-6-24 (b) (4).

[5] "Flat-bed van carriers shall not carry a load exceeding 63 feet in length and shall be clearly labeled with a permanent sign which shall be attached to the rear of the carrier and which shall be marked in letters at least 12 inches high. However, subsection (a) of this Code section, which provides that no trailer shall exceed 45 feet in length, shall not apply to flat-bed van carriers." OCGA § 32-6-24 (b) (5).

*Dept. of Transp. v. Del-Cook Timber Co.*, 248 Ga. 734, 742 (285 SE2d 913) (1982).

However, the essential of any such classification is that it bear a direct and real relation to the object or purpose of the legislation. See, e.g., *Lasseter v. Ga. Public Service Comm.*, 253 Ga. 227, 230-1 (319 SE2d 824) (1984).

4. OCGA § 32-6-24 (b) (2) exempts certain loads that are single length pieces. OCGA § 32-6-24 (b) (3), (4), and (5) exempt trucks used in different industries from the length requirements, according to their specific use. The inquiry thus becomes whether this classification is "reasonable" within the meaning of our standards for constitutionality, bearing in mind that the legislative warrant for the act is the public safety.

5. We cannot say that there is *no* rational basis for the exemptions for single length piece loads, for automobile carriers, and for flat-bed van carriers. The General Assembly may have found these provisions essential to the competitive and efficient transportation of those commodities.[6] We are unable, however, to understand how it can be that the transport of general freight in units longer than sixty feet is a threat to public safety, whereas a truck transporting live poultry is *only* a threat to public safety when its length exceeds sixty-five feet.[7]

6. This absence of a rational basis for distinction leaves us confronted with a dilemma.

(a) The truckdrivers, because they are not hauling live poultry, are facing prosecution for exceeding the length limit. It is thus fully apparent that, as compared to haulers of live poultry, they are denied the equal protection that our constitution demands.[8] On the record of

---

[6] It may be that, because of their lengths, logs and structural pieces, if they are to be transported at all in single lengths, must be exempt. Similarly, the lengths of motor vehicles may be such as to render grossly inefficient their carriage in vehicles of less than 60 feet.

[7] Compare treatment of weight limitations, which may be exceeded "when making a pickup or delivery on any public road of a county road system, without a permit when the load on any single axle does not exceed 23,000 pounds and the maximum total gross weight of the vehicle and load does not exceed 75,000 pounds when: . . . [h]auling live poultry from a farm to a processing plant located in the same or an adjoining county." OCGA § 32-6-26 (g) (1) (B).

[8] See also *Waller v. State Constr. Indus. Licensing Bd.*, 250 Ga. 529 (299 SE2d 554) (1983) (statute purporting to protect persons from unsafe plumbing practices denied to formerly locally-licensed plumbers the rights extended to formerly state-licensed plumbers); *Rutledge v. Gaylord's, Inc.*, 233 Ga. 694 (213 SE2d 626) (1975) (statute purporting to promote health, welfare, recreation, repose and religious liberty by limiting business on Saturdays and Sundays prohibited only sales by certain businesses on those days); *Simpson v. State*, 218 Ga. 337 (127 SE2d 907) (1962), (statute purporting to protect the public from the making, importation, possessing, advertising, selling or giving away of obscene materials exempted radio stations, television stations, movie theaters, and newspapers from the prohibitions).

this case, we are unable to uphold the validity of the exemption contained in OCGA § 32-6-24 (b) (4).

(b) Under such a circumstance, OCGA § 1-1-3 creates a presumption of severability, and, ordinarily, the exemption would be stricken.[9] That, however, seems a harsh course for persons who are currently transporting live poultry in units complying with the extended total length limits authorized by the statute — and particularly so, as no one of them is a party to this appeal.

7. Accordingly, rather than to excise the exemption for haulers of live poultry, the relief granted to these defendants is limited to declaring that the enforcement of total length limits — i.e., combination of vehicle and load — for general freight transport that are different from those total length limits enforced as to live poultry transport is violative of the Georgia Constitution.

## Delegation of Authority

8. OCGA § 32-6-24 (a) (2) specifies exceptions for oversized vehicles on "fully limited access highways designed to National System of Interstate and Defense Highways standards." The statute also authorizes the Department to designate any other street, road, or highway for oversized vehicles "to provide reasonable access requirements in compliance with [the law]." However, the Department must first consider:

> the operational and safety characteristics of such vehicles and of the roadways, provided that the department may rescind any roadway designation if it is determined by the department that the public safety has been diminished or that operational problems have been increased by the actual operation of such vehicles.

9. It is an obvious necessity that *some* authority decide which of the thousands of miles of state highways are suitable for the types of truck traffic governed by the statute. The Department is the appropriate agency to make such determinations, after the mandatory consideration of guidelines provided by the statute. If it were *not*, then that responsibility of necessity would fall to the General Assembly.[10]

---

[9] "Except as otherwise specifically provided in this Code or in an Act or resolution of the General Assembly, in the event any . . . subsection . . . of any Act . . . is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of . . . such Act . . ., which shall remain of full force and effect. . . ." See *City Council of Augusta v. Mangelly*, 243 Ga. 358, 363 (254 SE2d 315) (1979).

[10] The observations of Thomas Jefferson are enlightening. "Nothing is so embarrassing nor so mischievous, in a great assembly, as the details of execution. The smallest trifle of that

The delegation of authority to the Department of Transportation is not unconstitutional. See *Ward v. State*, 248 Ga. 60, 62 (281 SE2d 503) (1981).

10. In light of these dispositions, other enumerated constitutional challenges need not be addressed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MARCH 2, 1989 —
RECONSIDERATION DENIED MARCH 29, 1989.

*Charles M. Ferguson, District Attorney, David H. Moseley, Assistant District Attorney*, for appellant.

*Thomas H. Baxley*, for appellees.

*Michael J. Bowers, Attorney General, Roland F. Matson, Senior Assistant Attorney General*, amicus curiae.